AO 451 (Rev. 12/12) Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT
for the
District of Utah

| | |
|---|---|
| Martin J. Walsh ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 2:06-cv-00700-TC |
| Paragon Contractors et al ) | |
| *Defendant* ) | |

### CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)* **02/05/2021**.

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date: **02/15/2022**

**KIMBERLY A. FREE, PHD**
*CLERK OF COURT*

_____
*(By) Deputy Clerk*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MILTON AL STEWART, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>vs.<br><br>PARAGON CONTRACTORS CORPORATION, JAMES JESSOP, BRIAN JESSOP, and PAR 2 CONTRACTORS, LLC,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION FINDING PAR 2 CONTRACTORS, LLC LIABLE FOR BACKWAGE CONTEMPT REMEDY<br><br>Case No. 2:06-cv-700-TC |

On January 26, 2021, the court held a hearing in this contempt proceeding to address issues raised by its recent Order to Show Cause Issued to Par 2 Contractors (OSC).[1] The court gave Par 2 the opportunity to explain why it should not have to comply with the court's July 2, 2019 Order requiring payment of $1,012,960.90 in back wages (Back Wages Order)[2] to Plaintiff Secretary of the Department of Labor (Secretary or DOL).

The Back Wages Order was originally issued to Defendants Paragon Contractors Corporation and Brian Jessop to remedy their violation of the court's 2007 Permanent Injunction barring use of child labor. With only $200,000 paid toward the balance and Paragon essentially

---

[1] ECF No. 263.
[2] ECF No. 241.

1

defunct, the Secretary seeks an order requiring Par 2 to pay the difference. As the basis for his motion, the Secretary says the court made findings in 2018 that require Par 2 to pay the back wages remedy.

For the reasons set forth below, the court agrees with the Secretary and finds that Par 2 has not satisfied its obligation to show cause why it should not be bound by the Back Wages Order.

## PROCEDURAL AND FACTUAL BACKGROUND

In 2007, the court issued a permanent injunction in this child labor case that binds Paragon, Brian Jessop, and their co-defendant James Jessop. The 2007 Permanent Injunction[3] (Injunction) provides that

> Defendants shall not, contrary to Sections 12(c) and 15(a)(4) of the FLSA [Fair Labor Standards Act], employ, suffer or permit minors to work in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA under conditions constituting oppressive child labor as defined in § 3(l) of the FLSA, 29 U.S.C. § 203(l), and in occupations therein declared to be hazardous as defined in the regulations found at 29 C.F.R. Part 570 (Subparts C and E).

(Injunction at 2.)

A number of years later, the Secretary initiated contempt proceedings based on Paragon's recurring violation of the Injunction during the years 2008 to 2013. The court found Paragon and Brian Jessop in contempt for violating that provision. Since then, the court has issued a series of orders requiring Paragon and Brian Jessop to remedy harm done by their contempt.

This matter is a continuation of that process. The Secretary, armed with the court's 2018 order finding Par 2 to be a successor to Paragon and an instrumentality used to evade Paragon's

---

[3] ECF No. 26.

obligations under the Injunction, requests an order recognizing Par 2's liability for the unpaid back wages.

**Paragon's Contempt and Liability for Back Wages**

In June 2016, this court found that Paragon and Brian Jessop violated the Fair Labor Standards Act (FLSA)[4] by using child labor to harvest pecans for the Southern Utah Pecan Ranch. Based on those findings, the court held Defendants in contempt for violating the Injunction. (See June 16, 2016 Findings of Fact & Conclusions of Law, ECF No. 99 (Contempt Order).)

As a sanction for Defendants' contempt, the court ordered them to make an initial $200,000 payment to create a fund to compensate the children who worked for Defendants in violation of the child labor laws (the Fund). (See Dec. 6, 2016 Order on Sanctions, ECF No. 109 (Sanction Order).) In the Sanction Order, the court noted that "$200,000 likely underestimates the amount necessary for a compensatory sanction. But this amount provides an adequate starting point, and Defendants may have to pay more if legitimate claims exceed $200,000[.]" (Id. at 14.)

Defendants appealed the Contempt Order and the Sanction Order. The Tenth Circuit Court of Appeals affirmed the orders in relevant part. See Acosta v. Paragon Contractors Corp., 884 F.3d 1225, 1229 (10th Cir. 2018).[5]

---

[4] 29 U.S.C. § 201 et seq.
[5] The Tenth Circuit concluded that "the district court did not err in finding that Paragon and Mr. Jessop had violated the injunction by oppressively employing children and ordering Paragon and Mr. Jessop to pay $200,000," but it reversed the district court's appointment of a special master as a contempt remedy. Paragon, 884 F.3d at 1229. The portion of the court's order the Tenth Circuit reversed is not relevant here.

3

Ultimately, Defendants paid the $200,000 as an installment toward the full amount necessary to compensate the child laborers. To determine the full amount, the court ordered the Secretary to develop and manage a one-year claims process.

After a year of receiving claims from the workers, the Secretary, on April 18, 2018, proposed a schedule of payments necessary to satisfy the remainder of claims. (See DOL's Proposed Schedule of Payments, ECF No. 189.) Paragon objected, so the court scheduled an evidentiary hearing on back wages. (See Defs.' Objection to Pl.'s Proposed Schedule of Payments, ECF No. 190.) The court also directed Par 2, who had been added as a defendant,[6] to attend. (See Oct. 25, 2018 Order at 2, ECF No. 222.) Par 2 attended the hearing and had the opportunity to be heard, although it did not actively participate. (See June 7, 2019 Tr. of Nov. 5, 2018 Evidentiary Hr'g at 2, 4, ECF No. 237. After the hearing, the court, in the Back Wages Order, found Defendants owed $1,012,960.90 in back wages and ordered them to supplement the $200,000 with an additional $812,960.90.

Paragon and Mr. Jessop appealed, but the Tenth Circuit affirmed that decision as well. See Scalia v. Paragon Contractors Corp., 957 F.3d 1156 (10th Cir. 2020).[7] To date, Paragon and Brian Jessop have failed to pay the additional $812,960.90.

**Contempt of Par 2**

In the meantime, the DOL, while litigating the contempt action against Defendants, learned that Paragon had changed its name to Par 2 Contractors, LLC, and resumed using unlawful child labor in hazardous occupations in the construction industry. In September 2017,

---

[6] See Sept. 10, 2018 Mem. Decision Including Findings of Fact & Conclusions Law and Contempt Order at 35, ECF No. 209 (adding then-Intervenor-Defendant Par 2 as a Defendant).
[7] On June 26, 2020, the Tenth Circuit denied Defendants' petition for rehearing en banc. (See Ex. 1 attached to Mot. for OSC, ECF No. 255-1.)

4

the Secretary filed another motion for an OSC alleging that Par 2, as a successor to Paragon, was bound by and in contempt of the Injunction. (See Sept. 25, 2017 Mot. for OSC, ECF No. 138.)

Paragon opposed the motion, and Par 2 moved to intervene so it too could file an opposition.[8] The court granted Par 2's motion to intervene.[9]

During a status conference on November 14, 2017, which both Paragon and Par 2 attended, the court granted the motion for OSC. (See Minute Entry ECF No. 146.) The court also scheduled an evidentiary hearing and ordered supplemental briefing.

The Secretary, Paragon, and Par 2 filed declarations, briefs, and related motions. Par 2's opposition contained exhibits, including a declaration of Don Jessop and Par 2 business records.[10] In February 2018, the court, United States District Court Judge David Nuffer presiding, held a two-day hearing that resulted in substantial witness testimony and exhibits. (See Minute Entries dated February 26-27, 2018, ECF Nos. 181-82.)

In September 2018, the court, in a detailed order with findings of fact and conclusions of law, found that Par 2, as a successor to Paragon, was bound by and in contempt of the Injunction. (See Sept. 10, 2018 Mem. Decision Including Findings of Fact & Conclusions Law and Contempt Order, ECF No. 209 ("2018 Order").)[11] As held by the court, "Par 2 is a successor to Paragon and Paragon's business was transferred to Par 2 to evade the Injunction and the related subpoena enforcement and contempt proceedings that followed in 2013 (and culminated in a finding of contempt and sanctions order)." (Id. at 25.) As part of the contempt remedy, the court joined Par 2 as a defendant to the action. (Id. at 35.)

---

[8] See ECF No. 142 (including proposed response to the Secretary's motion supported by proposed exhibits, including a declaration of Don Jessop and Par 2 business records).
[9] See ECF No. 146.
[10] See ECF Nos. 166-67.
[11] Reported at Perez v. Paragon Contractors Corp., 340 F. Supp. 3d 1194 (D. Utah 2018).

5

Par 2, as well as Paragon and Brian Jessop, appealed. Par 2 contended that the district court violated its due process rights by finding it to be a successor to Paragon in a contempt proceeding rather than a new proceeding. "Specifically, Par 2 argue[d] it cannot be subject to liability for back wages from the pecan-harvest order and civil penalties from the administrative action absent a complaint, discovery, and a jury trial." Scalia v. Paragon Contractors Corp., 796 F. App'x 962, 966 (10th Cir. 2019).

On December 6, 2018, the Tenth Circuit affirmed the decision, but it declined to reach the merits of Par 2's due process argument because it was premature.

> As Par 2 itself frames its argument, its being deemed a successor to Paragon in a contempt proceeding was improper because Par 2 "*may* be held liable for millions of dollars in penalties and claims being pursued against Paragon." (emphasis added). It is uncertain whether Par 2 will in fact be held liable in the manner it predicts.

Id. at 966–67 (footnote omitted). Instead, the appeals court affirmed on "the only question before [it]," finding that Par 2 and its agents were appropriately bound by the Injunction under Rule 65 as the instrumentality through which Paragon and Brian Jessop sought to evade the injunction. Id. at 968. The appeals court did not decide whether Par 2 is a successor to Paragon. Id.

**Current Order to Show Cause**

Given the 2018 finding that Par 2 is a disguised continuance of Paragon, and because Paragon and Brian Jessop have not paid the $812,960.90 balance to the Fund, the Secretary moved the court to issue an order to show cause to Par 2. In that motion, the Secretary asserted that Par 2 is bound by the Sanction Order and, consequently, is liable for the resulting back wages remedy.

The court issued an OSC requiring Par 2 to provide cause why it should not be required to comply with the Back Wages Order mandating payment of the $1,012,960.90. (Dec. 8, 2020

6

OSC at 1, ECF No. 263.) Par 2 responded that granting the relief sought by the Secretary "without having afforded Par 2 the opportunity to conduct discovery or demand a jury trial as to the factual elements necessary to impose successor liability violates Par 2's due process rights." (Par 2's Response to Pl.'s Mot. OSC at 1, ECF No. 259.)

For the reasons set forth below, the court finds that Par 2 has not established cause to avoid payment of the remaining back wages.

## ANALYSIS

The court's September 2018 findings of fact and conclusions of law directly apply to the matter raised here. Those findings and conclusions are law of the case and may not be re-litigated. Entek GRB, v. Stull Ranches, 840 F.3d 1239, 1240–41 (10th Cir. 2016) (under the law of the case doctrine, a party is barred from re-litigating factual and legal issues that were "either expressly or implicitly resolved in prior proceedings" in the court).

Yet Par 2 asserts it is not bound by the court's Sanction Order or the Back Wages Order and to hold otherwise would violate its due process rights. Par 2 raises the same argument it made to the Tenth Circuit. According to Par 2, due process requires that the Secretary bring the claim in the form of a complaint, that the court give Par 2 an opportunity to conduct discovery, and that the court hold a trial in which a jury makes factual findings necessary to impose successor liability on Par 2.

The court disagrees. Par 2 has been given all the due process required to defend against the DOL's claims, and the court's 2018 factual findings and legal conclusions establish the elements the Secretary must prove to impose liability on Par 2 for the back-wage remedy.

**"Paragon and Par 2 are one and the same."**[12]

Par 2 is Paragon. "Paragon simply changed its name to Par 2 and continued business as usual." (2018 Order at 26.) That name change "is the only real distinction to be made between the two companies." (Id. at 32.) On appeal, the Tenth Circuit agreed: "[T]he record clearly and convincingly establishes Par 2 operated as a disguised continuance of Paragon. ... Par 2 simply picked up Paragon's operations." Scalia v. Paragon Contractors Corp., 796 F. App'x at 968.

**Paragon Changed its Name to Par 2 to Evade Its Contempt Obligations.**

The court found in 2018 that Paragon became Par 2 to evade its obligations under the Injunction. The Tenth Circuit affirmed that conclusion as well. Id. ("the purpose of this transition was to evade compliance with the 2007 injunction").

More specifically, the court found the transfer included an attempt to avoid the financial obligations imposed by the Sanction Order and the Back Wages Order.

> Par 2 is a successor to Paragon and Paragon's business was transferred to Par 2 to evade the 2007 injunction and the <u>related subpoena enforcement and contempt proceedings that followed in 2013 (and culminated in a finding of contempt and sanctions order)</u>.

(2018 Order at 25 (emphasis added).) That passage refers to this court's 2015-2016 proceedings finding Paragon in contempt for violation of the Injunction by using child labor to harvest pecans for the Southern Utah Pecan Ranch. (See, e.g., Sec'y Sept. 8, 2015 Mot. for OSC at 4 (discussing DOL 2013-2015 investigation of Paragon's 2011-2012 violation of Injunction through use of child labor during pecan harvest), ECF No. 30; June 1, 2016 Findings of Fact & Conclusions of Law at 9, ECF No. 99 (referring to court enforcement of DOL's 2013 subpoenas issued in connection with pecan harvest investigation).) Those proceedings resulted in the Contempt Order, the Sanction Order, and the Back Wages Order. As the court has already held,

---

[12] 2018 Order at 30.

8

part of compliance with the Injunction included compliance with those orders, and the business transfer was an attempt to avoid those obligations.

### The Injunction, Federal Rule of Civil Procedure 65, and the Court's 2018 Order Bind Par 2 to the 2016 Contempt Order, the Sanction Order, and the Back Wages Order.

The Injunction expressly prohibits Paragon and Brian Jessop from using child labor in violation of the FLSA. It also enjoins and restrains Defendants' "officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of [the injunction]." (Injunction at 2 (quoting Fed. R. Civ. P. 65(d)(2)).)

In the 2018 Order, the court found that Par 2, with actual notice of the Injunction, was in "active concert or participation" with Defendants when Paragon transferred its business to Par 2 in an effort to evade obligations imposed by the Injunction and subsequent contempt proceedings. (See 2018 Order at 24, 30–31.) The court similarly concluded that Par 2 was a successor to Paragon used as an instrumentality to evade those obligations. (Id. at 25, 32.)

Those obligations included the back wages remedy fashioned by the Sanction Order and Back Wages Order. Paragon's knowledge of those obligations was imputed to Par 2. (Id. at 31.) Because, as the court has already determined, Par 2 was in active concert or participation with Paragon and is a disguised continuation of Paragon used in Paragon's attempt to evade the Sanction Order, Par 2 is bound by those orders.

### Par 2 is Liable as a Successor to Paragon Under the FLSA and the Common Law.

In the 2018 Order, the court held Par 2 liable based on a federal test for successor liability under the FLSA that has been adopted in numerous jurisdictions. (See 2018 Order at 27–32.) That test incorporates some of the "MacMillan factors" traditionally applied in Title VII cases. (See id. at 27–28.)

Applying the three MacMillan factors courts have applied in the FLSA context, the court held that "Par 2 as a successor to Paragon can be held liable for contempt of the 2007 Injunction." (Id. at 27–30.) The court held that the first factor—substantial continuity in operations, work force, location, management, working conditions, and methods of production—had been satisfied. (Id. at 29–30). The court also found Par 2 had actual notice of the Injunction, which established the second factor. "Because Defendants used Par 2 as an instrumentality to violate the injunction, Brian and James Jessop's actual knowledge of the injunction is imputed to Par 2." (Id. at 31.) Here, Par 2, held to be "one and the same" as Paragon, also had knowledge of the Sanction Order and Back Wages it was formed to evade. And the third factor—Paragon's inability to provide relief—was clearly established on the record. (Id. at p. 5 ¶ 11, p. 27.) All of these findings are equally applicable to the issues raised by the DOL here.

The court's findings also established the facts necessary to hold Par 2 accountable under the common law doctrine of successorship liability. Under that law, the debts and liabilities of the transferring corporation are imposed on the receiving corporation in four circumstances, two of which are relevant here: (1) where the purchasing corporation is merely a continuation of the selling corporation, and (2) where the transaction is entered into fraudulently in order to escape liability for such debts. R.J. Enstrom Corp. v. Interceptor Corp., 555 F.2d 277, 281–282 (10th Cir. 1977); Macris & Assocs., Inc. v. Neways, Inc., 986 P.2d 748, 752 (Utah Ct. App. 1999). This court has already found facts that place the transaction between Paragon and Par 2 squarely within those two circumstances, that is, that Par 2 is merely a continuation of Paragon and that it was the instrumentality through which Paragon and Brian Jessop sought to evade the contempt proceedings and the Sanction Order. (See 2018 Order at 4–27.)

Under either test for successor liability, Par 2 is obligated to pay the back wages owed by Paragon.

**Par 2 Has Been Given the Necessary Due Process.**

Par 2 contends it is entitled to a new complaint, discovery, and a jury trial. Yet it does not cite to any case law supporting its position. And it does not explain how any of those procedures would allow it to defend itself more fully than the process it has already been given.

These contempt proceedings are the proper forum to resolve the issues. In <u>Regal Knitwear Company v. National Labor Relations Board,</u> the United States Supreme Court held that injunctions to prevent violations of the FLSA may be enforced in contempt proceedings against successors and assigns who were "instrumentalities through which defendant seeks to evade an order," including "'those to whom the business may have been transferred ... as a means of evading the judgment[.]'" <u>324 U.S. 9, 14</u> (1945) (quoting <u>Walling v. Reuter,</u> <u>321 U.S. 671, 674</u> (1944)).

Moreover, this matter and the previous proceedings arising out of Paragon's contempt have provided the process Par 2 needs to defend itself. Par 2 has not established a practical need or legal right to the additional process it insists upon.

A new complaint is not necessary. The Secretary's most recent Motion for OSC gave Par 2 sufficient notice of the Secretary's claims against it. Likewise, the facts upon which the Secretary relies were first presented in the Secretary's 2017 Motion for an OSC against Par 2[13] and then decided based on the 2018 evidentiary hearing in which Par 2 fully participated.

---

[13] <u>See</u> Sec'y's Sept. 25, 2017 Mot. for OSC, ECF No. 138; Nov. 14, 2017 Minute Entry granting Mot. for OSC, ECF No. 146.

11

Starting over with a new complaint would be a futile exercise; not only is Par 2 aware of the Secretary's allegations, but those allegations are now law of the case.

Par 2 does not explain how discovery would aid in its defense. The parties have already litigated the relevant facts, and the factual findings arising out of that litigation cannot be re-litigated.

Par 2's assertion that it will be denied due process if it does not get a jury trial is incorrect. The right to a jury trial only applies to actions at law. Mile High Indus. v. Cohen, 222 F.3d 845, 856 (10th Cir. 2000) ("[T]he Seventh Amendment right to a jury trial attaches to actions at law, not to those in equity."); Bowdry v. United Airlines, Inc., 58 F.3d 1483, 1489 (10th Cir. 1995) ("[T]he Seventh Amendment does not apply to actions which involve only equitable rights or which traditionally arose in equity."). Civil contempt proceedings are equitable in nature. Shillitani v. United States, 384 U.S. 364, 371 (1966); FTC v. Kuykendall, 371 F.3d 745, 754 (10th Cir. 2004). See also Ed Peters Jewelry Co. v. C & J Jewelry Co., Inc., 215 F.3d 182, 186 (1st Cir. 2000) (actions to determine successorship liability are equitable in nature). The fact that Par 2 has not received (and will not receive) a jury trial in this proceeding is not a violation of its due process rights.

Additionally, because Par 2 and Paragon are "one and the same," Par 2 essentially received due process during the proceedings resulting in the Contempt Order, the Sanction Order, and the Back Wages Order.

Par 2 had knowledge of the Contempt Order, the Sanction Order, and the Back Wages Order. In 2018, the court held that "because Defendants used Par 2 as an instrumentality to violate the injunction, Brian and James Jessop's actual knowledge of the Injunction is imputed to Par 2." (2018 Order at 31.) Applying the same principle, Brian Jessop's knowledge and, by

extension, Paragon's knowledge of the orders arising out of the pecan-harvesting contempt proceedings is imputed to Par 2.

As for Par 2's argument that it is not responsible because it was not involved in the earlier contempt proceedings, it relies on the fiction that it had no interest in or protection during those court actions because it did not exist and was a "stranger to the contempt findings and back-wages arising out of the pecan farm incident involving Paragon." (Par 2 Contractors, LLC's Response to Pl.'s Mot. for OSC at 8, ECF No. 259.) Given that Par 2 was a disguised continuance of Paragon, protection of Paragon's due process rights during those years was sufficient to protect Par 2.

Notably, Par 2 attended the back-wages hearing where the court took evidence and heard argument about the total amount owed by Paragon. At that hearing, Par 2 had the opportunity to present evidence and argument to the court. And of course Par 2 fully participated in the 2018 evidentiary hearing concerning the transfer of Paragon's business to Par 2.

Par 2 unpersuasively asserts that it is "a stranger" to the events giving rise to the Sanction Order and Back Wages Order. As the Secretary observes, "[i]t is a logical fallacy to suggest that Par 2 was deprived of any process related to Paragon's liability given that Par 2 was formed simply as a name change from Paragon while operating under the same individual control precisely to evade that liability." (Sec'y Reply at 6, ECF No. 260.) In short, Par 2 has had sufficient opportunity to defend itself, and an order to pay the back wages does not violate its due process rights.

## **ORDER**

For the reasons set forth above, the court holds that Par 2 is liable for the remedy set forth in the Back Wages Order. Accordingly, Par 2 is ORDERED to pay $812,960.90 to the Secretary

to satisfy the remaining balance of back wages owed.

DATED this 5th day of February, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

I hereby certify that the annexed is a true and correct copy of a document or an electronic docket entry on file at the United States District Court for the District of Utah.
Number of pages: 14
Date: 02/15/2022
Dr. Kimberly A. Fred
CLERK OF COURT
By: _____
Deputy Clerk